MARVIN L. ROHR v. KNUTSON CONSTRUCTION COMPANY AND ANOTHER. LAMETTI AND SONS CONTRACTORS, RESPONDENTS.

232 N. W. 2d 233.

July 25, 1975—No. 45035.

*Joseph J. Grill,* for relators.

*Crawford, Anderson & O'Connor* and *James J. O'Connor,* for respondent employee.

*Van Eps, Gilmore & Chantry* and *Michael D. Aafedt,* for respondent employer and insurer.

Heard before Peterson, MacLaughlin, and Yetka, JJ., and considered and decided by the court en banc.

MacLaughlin, Justice.

This is a writ of certiorari to review a decision of the Workmen's Compensation Commission. The commission found that the employee, Marvin L. Rohr, suffered a 25-percent permanent partial disability to his back as a result of a compensable injury on February 20, 1969, while employed by relator Knutson Construction Company. The commission also found that certain subsequent injuries were not new, independent, and intervening injuries but were a continued manifestation of the injury of February 20, 1969, and directly related thereto. We affirm.

On Feburary 20, 1969, employee Rohr, while employed as a construction worker with relator Knutson Company, slipped and fell as he was carrying a 100-pound gas cylinder. Rohr experienced a severe pain in his lower back, which radiated through his buttocks, thighs, and down to his knees. He was treated at the Mayo Clinic by Dr. Joseph Rushton, who diagnosed Rohr's injury as a herniated lumbar disc. The pain he experienced, although gradually decreasing, persisted in the ensuing months, forcing Rohr to wear a back brace and take pain pills.

On April 3, 1970, Rohr was working on his farm, carrying a 40-pound feed pail, when he slipped in the mud and fell on his back. Rohr required medical treatment for this injury. On October 24, 1970, he again injured his back while leaning out his second-floor bedroom window to reach a "posturepedic" mattress that had been brought up a ladder on the outside of the house.[1] On both these occasions, Rohr experienced the same pain that he had experienced after the accident of February 1969.

---

[1] The mattress was to be used to ease Rohr's back pain, but was being brought into the house in this fashion since it was not possible to get the mattress up the stairway to a second-floor bedroom.

On May 25, 1972, Rohr, who was then employed as a heavy construction worker for respondent Lametti Company, went into a ditch to retrieve a jackhammer. Gerald Roehl, the foreman, was on the side of the ditch directly above him and witnessed the accident. Apparently, as Rohr was bending over to pick up the jackhammer, he felt very severe back pain causing him to lose his breath and drop to his knees for several minutes. Examination and a myelogram at Mayo Clinic revealed a protruded disc in the lower back, but no surgery was done to correct the condition. Rohr has since returned to work.

Rohr's claim petition was filed against Knutson and Lametti. Following a hearing, a workmen's compensation judge found that the disability of April 1970 was unrelated to his previous employment but that the disability and treatment after the October 1970 injury was substantially related and thus compensable. He further found that the injury in May 1972 was temporary, and that a 10-percent permanent partial disability to the back would be allocated solely to the accident of February 1969. This decision was appealed to the commission, which found a 25-percent permanent partial disability of Rohr's back and further found that all the injuries were related to the original accident of February 1969. As a result, the commission decided that all compensation should be paid by Knutson and its insurer. Thereafter, a writ of certiorari was issued by this court.

The only issue before us is whether the commission's findings are supported by the evidence. Therefore, the scope of our review is to determine if there is credible evidence on which the commission's findings may be based. Villebrun v. Fryrear, 288 Minn. 478, 183 N. W. 2d 279 (1970). Findings of the commission upon questions of fact will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion. Grgurich v. Sears, Roebuck & Co. 301 Minn. 291, 223 N. W. 2d 120 (1974).

The rule of law applicable in this case is that a disability re-

sulting from an accident which aggravates an existing infirmity, where the existing infirmity was caused by an earlier accident sustained in the course of employment, is compensable even though the subsequent accident would have caused no injury to a normal person. Marsolek v. Miller Waste Mills, 244 Minn. 55, 69 N. W. 2d 617 (1955). In accordance with that rule, the commission viewed this case as one in which a weakened condition was aggravated on three later occasions and determined that the employer at the time of the original injury should be responsible for subsequent medical expenses and compensation.

1 Larson, Workmen's Compensation Law, § 13.00, states the principle of law involved:

"When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

Larson goes on, in § 13.11, to illustrate this principle by reference to a case arising in Utah:[2]

"* * * [C]laimant had suffered a compensable accident in 1966, injuring his back. Several years later, this condition was triggered by a sneeze into a disc herniation, for which claimant required surgery. The medical testimony was that because of the back condition, it was probable that had claimant not had the sneezing episode, some other major or minor event would have eventually necessitated surgery. The finding that the sneezing episode was the independent cause of claimant's disability, and the resultant denial of compensation, were held to be error, and benefits were awarded on appeal. This result is clearly correct. The presence of the sneezing incident should not obscure the true nature of the case, which is nothing more than that of a further medical complication flowing from a compensable injury. If the

---

[2] Perchelli v. Utah State Industrial Comm. 25 Utah 2d 58, 475 P. 2d 835 (1970).

herniation had occurred while claimant was asleep in bed, his characterization as a mere sequel to the compensable injury would have seemed obvious. The case should be no different if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances."

Other cases have posed the same question under similar facts. In Hartford Fire Ins. Co. Group v. Beeler, 244 F. Supp. 188 (E. D. Tenn. 1965), the claimant had suffered a back injury. While recuperating, he suffered further pain when picking peaches and reinjured his back while driving some cows, the last incident resulting in the removal of a disc. Doctors testified that the further injury was due to a weakened condition of the back caused by the first accident. The court held that the entire disability caused by the three incidents was compensable. See, also, Rich v. Vail Ballow Press, Inc. 33 App. Div. 2d 1088, 307 N. Y. S. 2d 943 (1970).

After reviewing the record, we find that it supports the conclusion that the accident of February 20, 1969, caused Rohr's back to be permanently weakened and that it has not healed. Therefore, as stated in Eide v. Whirlpool Seeger Corp. 260 Minn. 98, 101, 109 N. W. 2d 47, 49 (1961):

"* * * [W]here an industrial accident creates a permanently weakened physical condition which an employee's subsequent normal physical activities may aggravate to the extent of requiring additional medical or hospital care, such additional care is compensable."

There is competent medical evidence to support a finding that the subsequent occurrences were not new, independent, and intervening injuries which were themselves responsible for Rohr's disability and medical expense occurring thereafter. Rather, the evidence supports the conclusion that the subsequent disability

and medical expense was a natural consequence flowing from the previous injury without an intervening or independent cause.

While there were, as usual, conflicting medical opinions, Dr. Joseph Rushton of the Mayo Clinic treated respondent after each accident and was very familiar with Mr. Rohr's physical condition. In his deposition, a part of the record, he testified that the subsequent symptoms exhibited by Rohr were similar to, and were related to, the original injury of February 1969. Dr. Rushton's ultimate opinion was that all three later episodes stemmed from the original injury and were exacerbations of a preexisting condition, not new injuries. Dr. Rushton, in substance, testified that Rohr suffered the major portion of a herniated lumbar disc in the first accident, which never had the opportunity to heal and was continuously aggravated thereafter.

Dr. Robert Wengler, an orthopedic surgeon, testified that Rohr has incurred a 25-percent permanent partial disability of his back as a result of the February 1969 accident. He also testified that in his opinion the physical disability incurred by Rohr was a result of the injury in February 1969 and that the later incidents merely caused a recurrence and continuation of the original injury.

Because there is credible evidence to support the commission's findings, we affirm.

Employee is awarded $400 in attorneys fees for this appeal. Affirmed.