**RICHARDS IRRIGATION COMPANY, Plaintiff and Third–Party Defendants,**

v.

**Ves A. KARREN d/b/a Rock Products Company, Defendant, Third–Party Plaintiff and Appellant,**

v.

**UTAH DIVISION OF WATER RESOURCES, Peter T. Linn, and W. James Palmer, Third–Party Defendants and Appellees.**

No. 920407–CA.

Court of Appeals of Utah.

Aug. 2, 1994.

---

David L. Barclay and Nathan R. Hyde, Salt Lake City, for appellant.

Jan Graham and Brent A. Burnett, Salt Lake City, for appellees.

Before BENCH, BILLINGS and GREENWOOD, JJ.

BENCH, Judge:

Third-party plaintiff Rock Products Company (Rock Products) appeals from the trial court's dismissal of its causes of action against the State under Rule 12(b)(6) of the Utah Rules of Civil Procedure. We affirm in part, reverse in part, and remand.

## FACTS

Richards Irrigation Company (Richards) entered into a contract with the Utah Division of Water Resources (Division) to construct an irrigation system. The contract required the Division to pay for eighty-five percent of the cost of the irrigation system and to engineer and supervise its construction. Appellant Ves A. Karren, doing business as Rock Products, entered into a contract with Richards to install a pressurized water system as part of the project.

During construction, Richards and Rock Products disputed how much money was owed for Rock Products's work. As a result, Rock Products ceased work on the irrigation system and Richards brought an action against Rock Products. Rock Products brought a counterclaim against Richards and this third-party action against the Division and two of its employees, Peter T. Linn and W. James Palmer (collectively "the Division defendants"). Rock Products's complaint alleged fifteen causes of action, including the following: (1) conspiracy to defraud; (2) negligent misrepresentation; (3) conspiracy to convert property; (4) breach of contract; (5) tortious interference with contractual relations; (6) injunctive relief; (7) breach of good faith; (8) violation of state constitutional rights; and (9) a civil rights claim against Linn and Palmer pursuant to 42 U.S.C. § 1983 (1979).

The Division defendants moved to dismiss the third-party complaint pursuant to Rule 12(b)(6) of the Utah Rules of Civil Procedure. Following a hearing, the trial court dismissed all of Rock Products's causes of action against the Division defendants. The court made the following rulings: (1) Rock Products's complaint failed to state a claim against the Division defendants upon which relief could be granted; (2) the Governmental Immunity Act bars every aspect of Rock Products's claims against the Division defendants; (3) Rock Products did not have a contract with the Division and Rock Products was not an intended beneficiary of Richards's contract with the Division; (4) Rock Products's tort claims did not state a cause of action; (5) Rock Products's civil rights claims were without merit; and (6) Rock Products failed to comply with the notice requirements of Utah Code Ann. §§ 63-30-11 to -12 (1986). This appeal followed.[1]

## ISSUES

Rock Products raises several issues on appeal, including the following: (1) whether the trial court erred in ruling that the Governmental Immunity Act barred Rock Products's causes of action against the Division defendants; (2) whether the trial court erred in dismissing Rock Product's tort claims under Rule 12(b)(6); (3) whether the trial court erred by dismissing Rock Products's contract claims under Rule 12(b)(6); (4) whether the trial court erred by determining that Rock Products's complaint did not state a claim upon which relief could be granted because the necessary elements of fraud, constitutional, and civil rights causes of actions were not properly pleaded; (5) whether the trial court erred by concluding that Rock Products could not plead any constitutional or civil rights causes of action; and (6) whether the trial court erred by concluding that Rock Products must comply with the notice requirements of the Utah Governmental Immunity Act before bringing a civil rights claim. For purposes of this opinion, we consolidate the issues into five general categories: (1) governmental immunity; (2) tort claims; (3) contract claims; (4) constitutional claims; and (5) section 1983 civil rights claims.

---

1. The court also noted, but did not base its decision on the fact that Rock Products may not have filed an undertaking. The State argues that since Rock Products did not file an undertaking its claims against the Division are barred. This argument is without merit. The trial court's dismissal of Rock Products's claims was not predicated on Rock Products's alleged failure to file an undertaking. However, we would reverse even if the trial court had dismissed Rock Products's claims for failure to file an undertaking. Failure to file an undertaking is an affirmative defense not properly raised in a Rule 12(b)(6) motion. *See Hansen v. Salt Lake County,* 794 P.2d 838, 840 (Utah 1990); Utah R.Civ.P. 8(c) & 12(b). Moreover, a dismissal of a claim for failure to file an undertaking is without prejudice. *See Hansen,* 794 P.2d at 840. Because the trial court dismissed Rock Products's claims with prejudice it did not dismiss them for an alleged failure to file an undertaking.

## STANDARDS OF REVIEW

When reviewing a motion to dismiss based on Rule 12(b)(6), we accept the material allegations of the complaint as true, and will affirm the trial court's decision only if it clearly appears that the complaining party can prove no set of facts in support of his or her claim. *Hansen v. Department of Fin. Insts.*, 858 P.2d 184, 185–86 (Utah App. 1993). Because the propriety of a Rule 12(b)(6) motion is a question of law, "we give no deference to the trial court's ruling." *Id.* at 186. Further, statutory construction presents a question of law and we accord the trial court's conclusions no deference. *Beynon v. St. George–Dixie Lodge # 1743*, 854 P.2d 513, 515 (Utah 1993).

## ANALYSIS

### Governmental Immunity

The propriety of the trial court's determination that all of Rock Products's claims were barred by the Governmental Immunity Act ("the Act") hinges on whether the trial court should have applied the 1987 amendments to the Act. Under pre–1987 law, the test applied to determine if the activity in question was a governmental function and thereby protected by sovereign immunity was "whether the activity under consideration [was] of such a unique nature that it [could] only be performed by a governmental agency or that it [was] essential to the core of governmental activity." *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230, 1236–37 (Utah 1980). The definition of "governmental function" was therefore critical to the determination of whether immunity applied. *Id.* In *Standiford*, the court applied this test and concluded that the "operation of a public golf course is not essential to governing, and it is therefore not a governmental function." *Id.* Similarly, in *Johnson v. Salt Lake City Corp.*, 629 P.2d 432, 434 (Utah 1981), the Utah Supreme Court applied the *Standiford* test and determined that the operation of a sledding hill on a municipal golf course was not a governmental function protected by immunity. The court further stated that the *Standiford* test "does not refer to what the government *may* do, but to what the government alone *must* do." *Id.* In *Thomas v.*

*Clearfield City*, 642 P.2d 737, 739 (Utah 1982), the supreme court again applied the *Standiford* test and concluded that the collection and disposal of sewage was not a governmental function entitled to immunity. *See also Dalton v. Salt Lake Suburban Sanitary Dist.*, 676 P.2d 399, 400–01 (Utah 1984) (immunity does not apply to operation of sanitary district because it is not a governmental function).

In 1987, the legislature amended the Act to modify the definition of "governmental function." *See* Utah Code Ann. § 63–30–2(4)(a) & (b) (1993). The amendment broadly defines "governmental function" to include:

> any act, failure to act, operation, function, or undertaking of a governmental entity whether or not the act, failure to act, operation, function, or undertaking is characterized as governmental, proprietary, a core governmental function, unique to government, undertaken in a dual capacity, essential to or not essential to a government or governmental function, or could be performed by private enterprise or private persons.

*Id.* § 63–30–2(4)(a). A "governmental function" under the act may be "performed by any department, agency, employee, agent, or officer of a governmental agency." *Id.* § 63–30–2(4)(b). Under this amendment, the financing, design, and construction of an irrigation system by the Division would be a governmental function and the Division defendants would be immune from suit for their activities.

The events giving rise to Rock Products's claims occurred prior to the 1987 amendment. Rock Products argues that because the 1987 amendment was a substantive change in the law, the trial court erred by applying it retroactively. We agree.

Statutory amendments may be applied retroactively in very limited circumstances such as " 'when the purpose of an amendment is to clarify the meaning of an earlier enactment' ... or is merely an 'amplification as to how the law should have been understood prior to its enactment.' " *Rocky Mountain Thrift Stores v. Salt Lake City Corp.*, 784 P.2d 459, 461–62 (Utah 1989) (citations omitted).

However, "'a later statute or amendment should not be applied in a retroactive manner to deprive a party of his rights or impose greater liability upon him.'" *Id.* at 462 (quoting *Okland Constr. Co. v. Industrial Comm'n,* 520 P.2d 208, 210 (Utah 1974)). "If the ... amendment provides defendants with *any* greater degree of immunity ... than that previously provided [by the Act], it is a substantive change from the law as it existed [prior to the amendment] and cannot be applied retroactively." *Id.* The 1987 amendment did away with the common law definitions of governmental function, thereby broadening the immunity provided to the Division defendants. Because the amendment broadened the scope of protection provided to the Division defendants, the trial court erred by applying it retroactively.

■ The financing, design, and construction of the Richards irrigation system was not of such a unique nature that it could be performed only by government, nor was it essential to a core governmental activity. *See Standiford,* 605 P.2d at 1237. Such activities could be accomplished by private entities to the same extent they could be accomplished by government. Therefore, under pre–1987 law, the Division defendants are not entitled to the protection of governmental immunity for their activities associated with the Richards irrigation system.

### Tort Claims

Rock Products argues that the trial court erred in dismissing its tort claims pursuant to Rule 12(b)(6). We agree.

■ In the absence of governmental immunity, we cannot say that it clearly appears that Rock Products can prove no set of facts in support of its tort claims. Trial courts must exercise caution in granting summary judgment where tortious conduct is alleged. *See Apache Tank Lines, Inc. v. Cheney,* 706 P.2d 614, 615 (Utah 1985) ("summary judgment should be granted with great caution in negligence cases."); *Mumford v. ITT Commercial Fin. Corp.,* 858 P.2d 1041, 1044–45 (Utah App.1993) (where alleged facts raise issue of intentional tort, summary judgment is inappropriate). In considering a motion to dismiss pursuant to Rule 12(b)(6), even more caution is required. Since the allegations in Rock Products's complaint must be accepted as true for purposes of a Rule 12(b)(6) motion, the trial court erred in dismissing the tort claims against the Division defendants. *See Hansen,* 858 P.2d at 185–86.

### Contract Claims

Rock Products also argues that the trial court erred in dismissing its contract claims under Rule 12(b)(6). We agree.

■ Rock Products claims that it was a third-party beneficiary of the contract between the Division and Richards, and that the Division breached its implied duty of good faith and fair dealing. To determine whether a party is a third-party beneficiary, the trial court must examine the intent of the contracting parties as evidenced by the contract and surrounding facts and circumstances. *Wasatch Bank v. Surety Ins. Co.,* 703 P.2d 298, 300 (Utah 1985). Because the determination of intent is a factual determination, *see Jarman v. Reagan Outdoor Advertising Co.,* 794 P.2d 492, 495 (Utah App. 1990), the trial court erred in dismissing this claim as a matter of law under Rule 12(b)(6).

### Constitutional Claims

■ Rock Products claims that the trial court erred in dismissing its constitutional claims. Specifically, Rock Products claims that the trial court erred by ruling that it did not have a private right of action for a violation of Article 12, section 19 of the Utah Constitution. We disagree.

Article 12, section 19, in force at the time this cause of action arose, stated:

Every person in this State shall be free to obtain employment whenever possible, and any person, corporation, or agent, servant or employee thereof, maliciously interfering or hindering in any way, any person from obtaining or enjoying employment already obtained, from any other corporation or person, shall be deemed guilty of a crime. The Legislature shall provide by law. for the enforcement of this section.

Utah Const. art. XII, § 19.[2] The legislature has provided for the enforcement of this constitutional provision in Utah Code Ann. §§ 34–24–1 to –2 (1988). Section 34–24–2 provides that anyone guilty of violating this constitutional provision, or section 34–24–1, shall be "guilty of a felony and shall be fined not less than $55 nor more than $1000 and imprisoned in the state prison not less than sixty days nor more than one year." *Id.* § 34–24–2. As such, neither the constitution nor the statute create a private right of action, but merely provide for criminal remedies. Therefore, the trial court did not err by dismissing Rock Products's constitutional claims.

### Civil Rights Claims

Rock Products argues that the trial court erred in dismissing its civil rights claims against Division employees Peter Linn and James Palmer pursuant to 42 U.S.C. § 1983 (1979). Specifically, Rock Products claims that Linn deprived Rock Products of a property right without due process of law in violation of the Fourteenth Amendment to the United States Constitution, and that Palmer violated section 1983 when he removed Rock Products from the Division's prequalified contractors list in violation of Article 12, section 19 of the Utah Constitution.

 In order to be sued under section 1983, an entity must be a "person" as that term has been defined by the courts. *See Ambus v. Utah State Bd. of Educ.,* 858 P.2d 1372, 1376 (Utah 1993) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). "Government officials sued in their official capacity are not persons for purposes of an action for damages under § 1983...." *Id.*; *accord Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). Rock Products alleged that Linn and Palmer were acting as "employees, agents and representatives of the Division" when they violated Rock Products's civil rights. Since Linn and Palmer were acting in their official capacity

for the Division, they do not qualify as "persons" for purposes of a section 1983 action. Therefore, the trial court did not err in dismissing Rock Products's section 1983 claims against Linn and Palmer.

### CONCLUSION

The trial court erred by applying the 1987 amendments to the Governmental Immunity Act retroactively and holding that the Act barred Rock Products's claims. The trial court erred by dismissing Rock Products's tort and contract claims as a matter of law. The trial court properly dismissed Rock Products's constitutional and civil rights claims. We remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BILLINGS and GREENWOOD, JJ., concur.

---

2. This provision was slightly modified and the last sentence was stricken by constitutional amendment effective on January 1, 1993.